UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

$O$

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(In Chambers:) CROSS-MOTIONS FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT** (filed August 2, 2012)

## I.     INTRODUCTION

This is an ERISA trust fund collection suit. Defendant Smith-Emery Company ("SEC") is a signatory to a collective bargaining agreement ("CBA") with the International Union of Operating Engineers, Local Union No. 12 ("Local 12"). Defendant and Local 12 perform field inspection work on construction projects within Local 12's geographic jurisdiction. Pursuant to the CBA, defendant must pay fringe benefit contributions for the hours worked by covered employees to four distinct fringe benefit trust funds.

On March 2, 2009, plaintiffs Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation Holiday Savings Trust, and Trustees of the Operating Engineers Training Trust ("Trustees") initiated this suit to collect ERISA trust fund contributions from defendant Smith-Emery Corporation ("SEC"), pursuant to 29 U.S.C. §§ 1132(g) and 1145 (§ 515 of ERISA). Dkt. No. 1. Plaintiffs allege that based upon their audit of the hours worked from March 1, 2003, through December 31, 2009, defendants have failed to make all the required trust fund contributions. Defendant filed its answer on March 25, 2009. Dkt. No. 5.

After protracted and contentious discovery, plaintiffs filed a motion for summary judgment, or in the alternative partial summary judgment, on August 2, 2012. Dkt. No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|----------|----------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

80.  Defendants filed a motion for partial summary judgment on the same date.  Dkt. No. 79.  On August 20, 2012, defendant and plaintiffs filed their respective oppositions.  Dkt. No. 103; 113.  On August 27, 2012, both parties filed their respective replies.  Dkt. No. 116; 121.  The Court held a hearing on September 10, 2012 and requested supplemental briefing on the "coverage issue," described more fully below.  The parties submitted their respective responses on September 21, 2012.  Dkt. Nos. 125, 126.  After considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

### A.    Origins of the Current Dispute

Since 1969, SEC and Local 12 have entered into a series of collective bargaining agreements ("CBA") governing working conditions, wages, hiring, and fringe benefit contributions, among other items.  At issue here are three CBAs covering the period from March 1, 2003 until December 31, 2009 for which the Trusts claim SEC owes additional contributions: the 2001 Agreement, the 2004 Agreement, and the 2007 Agreement.  See Pls.' Separate Statement of Uncontroverted Facts ("SS") 5–7.[1]

Pursuant to the relevant CBAs, SEC pays fringe benefit contributions to the Trusts based on the number of hours worked by or paid to covered employees under the agreement.  Pls.' SS 19.  Much of this dispute turns on *who* is a covered employee under the CBA, and what *work* is covered, such that fringe benefit contributions must be paid to the Trusts.  Both parties assert that the plain language of the CBAs unambiguously supports their respective interpretations.

In October and November of 2005, and again in September 2008, the Trustees demanded that SEC submit to audits for the work performed from March 2003 forward.

---

[1] Because the parties agree that CBAs at issue are essentially identical in all material respects for the provisions at issue in this litigation, the Court will refer to a single CBA throughout when interpreting the language of the CBAs, except where otherwise noted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|---|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

Pls.' SS 25.  SEC allegedly refused to comply, leading to the instant lawsuit.  Pls.' SS 26, 28.[2]

After piecing together various forms of evidence, Trustees conducted an audit of the available records and determined that SEC allegedly owes the Trusts unpaid fringe benefit contributions relating to work performed from March 1, 2003 through December 31, 2009.[3]  Trustees then issued a revised audit on June 29, 2012.  See Def.'s Ex. 4A-C.[4]  This revised audit is divided into parts A through K, all covering different alleged deficiencies in contributions.  See id.; Pls.' SS 37–39.  The revised audit removes parts D, I, and J entirely.  Part A of the revised audit covers clerical errors resulting in underpayment.  Part B seeks contributions for travel hours by certain employees on certain dates.  Part C pertains to unpaid holiday hours.  Parts E, F, and G seek contributions for employees or sub-employees of SEC for whom plaintiffs allege, and defendants deny, are covered by the relevant CBA.  Part H seeks contributions for work performed by SEC for the Los Angeles Unified School District, which plaintiffs allege was performed pursuant to a Project Stabilization Agreement mandating certain contributions.  Finally, part K of the audit pertains to "cash disbursements" allegedly

---

[2] Defendant disputes plaintiffs' contentions that plaintiffs requested an audit of defendant on multiple prior occasions.  See Def.'s Statement of Genuine Issues in Opposition to Pls.' Mot. at 16.  However, defendant does so only on relevance grounds, which the Court finds unavailing here.  Because defendant has raised the statute of limitations as an affirmative defense, plaintiffs' attempts to conduct an audit of defendant is relevant to any equitable tolling that may be at issue.

[3] The Court finds defendant's identification of a "genuine issue" here to be without merit, as such facts are relevant on multiple grounds.  As discussed in detail *infra*, defendant has a duty under ERISA to maintain adequate records, and its failure to do so or purposeful destruction of such records may lessen plaintiffs' burden of proof for their claimed hours.

[4] It appears Trustees revised audit initially requested a greater amount of unpaid contributions, but the Trustees "waived additional categories of work further reducing the amount of the audit" in order to "simplify" the dispute for summary judgment purposes.  Plaintiffs' Reply at 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|---|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

made to other inspection companies who were performing covered work within Local 12's jurisdiction.  In sum, plaintiffs seek contributions for 111,414.50 hours of work which purportedly went unreported, for a total of $920,994.53 in unpaid fringe benefit contributions.  Id.  Defendant disputes both the categories of hours claimed as "covered" under the agreement and the total figure claimed by the Trustees in its motion.

Pursuant to 29 U.S.C. § 1132(g)(2), plaintiffs also seek interest on these unpaid contributions, liquidated damages, audit fees, and attorney's fees and costs of suit.  Pls.' Mot. at 14.

## B.    The Disputed CBAs

The parties dispute who and what work is covered under the relevant CBAs.  The relevant portion of each CBA begins with Article I, "Coverage," the terms of which are identical for all three CBAs at issue except as noted below.  Article I, section A states:

> This Agreement shall apply to all field work inspection by Building/Construction Inspectors of concrete, steel, masonry work and non-destructive and or/grading inspection performed by employees of the Employer in the following Southern California Counties: Imperial, Inyo, Kern, Los Angeles, Mono, Orange, Riverside, San Bernadino, San Diego, San Luis Obispo, Santa Barbara and Ventura.

Plaintiff's Ex. 1 at 2; Def's Ex. 1 at 2.  Article I, Section B then sets forth the definition of a "Building/Construction Inspector":

> A Building/Construction Inspector as used in the Agreement is defined as follows:
>
> 1.  A Licensed and/or Registered Building/Construction Inspector in those areas where Building Officials/Departments license Building Inspectors.
>
> 2.  In those areas where Building/Construction Inspectors are not licensed by Building Officials/Departments, a Building/Construction Inspector is an inspector who performs the same duties as a Licensed and/or Registered Deputy Building Inspector.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|---|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

It is mutually agreed that the term "Building/Construction Inspector" shall apply to and cover all forms of construction inspection work, however such work may be referred to by the Employer.  This shall include all forms of inspection work described in this Agreement, and shall also specifically include such work where it is referred to by utilization of such terms as "quality control" or "quality assurance", so long as there is actual work being performed on a construction jobsite of the type described in this Agreement *including Appendix B*.

        3.  Any employee or sub-employer performing work covered by this Agreement including but not limited to Ultrasonic Testing, Magnetic Particle Testing, and Grading Inspector.  Penetrant Testing, Spray Applied Fireproofing, Concrete Batch Plant, Asphaltic Concrete, Earthwork, Grading Inspector Glu Lam Truss Joints, Load Testing for Ceiling Anchors, Shear Walls and Floor Systems used as Shear Diaphrams.  Included shall be all new or existing construction, alteration, demolition, repair work or any seismic evaluation.

Id.[5]  The aforementioned Appendix B sets forth "general descriptions of inspection and testing work covered by this Agreement," stating further that:

    Although all work described hereinbelow is covered by this Agreement, any similar duties performed by employees in the classifications covered by this Agreement, or other tasks pertaining to the completion of the work described hereinbelow, shall be covered by this Agreement even if not set forth in this Agreement.

Id.  The categories of work covered in Appendix B are: reinforcing steel, pre- and post-tensioned concrete, structural steel and welding inspection, nondestructive testing, glu

---

        [5] The italicized language was not added until the third CBA at issue, effective in 2007, which memorialized the arbitrator's decision discussed *infra*.  Given that the arbitrator found that previous CBAs included Appendix B, even without this additional language, the Court finds this added phrase to be immaterial in interpreting the three CBAs at issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

lam and truss joints, truss-type joint construction, shear walls and floor systems, concrete batch plants, spray-applied fireproofing, structural masonry, shotcrete, and concrete. Id. Appendix B, 22–37.

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.  DISCUSSION

### A.  The 2006 Arbitration

Both parties direct the Court's attention to a 2006 arbitration between Local 12 and SEC related to a number of grievances filed by Local 12 against SEC pursuant to the CBA.  The Trusts were not a party to this arbitration.  Both Local 12 and SEC were represented by counsel and had the opportunity to present evidence and call witnesses.  Both parties agree that SEC and the Trusts are bound by the arbitrator's decision (and by implication this Court), though they disagree as to its meaning.

Relevant to this dispute are the arbitrator's coverage decisions regarding offsite concrete batch inspection work, bolt testing inspection work, and water control inspection work.  See Plaintiffs' Ex. 12 at 3.  First, the arbitrator found that offsite batch inspection work was not covered under the 2001 CBA.  Id. at 5.  The Union had argued that offsite plants were covered "in the general contractual coverage of all forms of construction inspection work, and a specific reference to coverage of concrete batch plants."  Id.  However, the arbitrator found that the off-site batch plants at issue in the arbitration did not require inspection by "a licensed deputy building inspector" under the California building code; therefore, this work was "not bargaining unit work."  Id.

Second, SEC had argued that "Appendix B" to the CBA was not part of the agreement and therefore bolt testing and water control inspection work were not covered.  Id. at 6.  The arbitrator agreed with the Union, however, that Appendix B was part of the agreement and that these types of work were covered, finding that SEC was "not allowed to escape its responsibility because its sister entity, Smith Emery Laboratories, has the proper licensing to do this work while it does not."  Id.  The arbitrator classified these violations as intentional.  Id.

Neither party has disputed these findings here, but they disagree as to the scope of the arbitrator's decision for purposes of collateral estoppel.  Plaintiffs argue that the 2006 arbitration award collaterally estops defendant from claiming that "the only work covered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|----------|----------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

by its Agreement is that work which requires a license of a deputy building inspector," because the arbitration award incorporated plaintiffs' argument to the contrary. Plaintiffs argue that the arbitrator found both bolt testing and water control inspection to be covered *despite* defendant's argument that "the work is not required to be performed by a licensed deputy building inspector." Pls.' Reply at 1; Pls.' Opp'n at 3–8; see Pls.' Ex. 75 at 138:18–25; Pls.' Ex. 129 at 20, 22.[6] By necessary implication, plaintiffs argue, the arbitrator rejected defendant's licensing argument in finding these types of work to be covered. Additionally, though defendant argued that water control work was covered only in jurisdictions which required a license, the arbitrator made no distinction in his award as to the jurisdictions in which this work was covered. Therefore, plaintiffs contend, defendant cannot attempt to "relitigate" this issue in the instant proceedings of whether "only work required to be performed by a licensed deputy building inspector is covered work." Pls.' Opp'n at 6 (citing Am. Fed'n of Television & Radio Artists Health & Ret. Funds v. WCCO Television, Inc., 934 F.2d 987, 991 (8th Cir. 1991)).

Defendants argue that because the arbitrator did not "actually decide" that the only work covered by the CBA is that work which requires a license, no collateral estoppel applies. Defendant reasons as follows: (1) none of the "seven issues" the arbitrator had before him included the coverage issue as framed by plaintiffs; (2) the arbitrator found bolt testing and water control work to be covered because these are listed in Appendix B of the CBA; and (3) the arbitrator adopted defendant's reasoning in finding that batch plant inspection was not covered. Def.'s Reply at 10–14. Because the arbitrator never decided whether coverage was limited to work performed by licensed inspectors or not, defendant argues that collateral estoppel does not apply as to that issue.

----

[6] During the arbitration proceeding and in its post-arbitration brief, defendant argued that offsite batch plant, bolt testing, and water control inspection work do not require an individual to be a licensed deputy building inspector. See Pls. Ex. 129 at 8, 20, and 21; see also id. at 22 ("Any and all Inspection related work which DOES NOT require a licensed Deputy Building Inspector, is OUTSIDE the scope of the parties agreement."). However, defendant's principal argument was that Appendix B was not a part of the CBA, an argument that the arbitrator rejected in finding both of these types of inspection work to be covered.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|----------|----------------------|---|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

For the reasons set forth below, the Court concludes that plaintiffs' argument fails. A court may apply collateral estoppel when:

> (1) the issue was necessarily decided at the previous proceeding and is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

Granite Rock Co. v. Int'l Broth. of Teamsters, Freight, Constr., Gen. Drivers, Warehousemen & Helpers, Local 287, 649 F.3d 1067, 1070 (9th Cir. 2011). Here, the arbitrator did not "necessarily decide" the coverage issue at the heart of this case; namely, whether coverage extends to work which does not require a building/ construction inspector license. First, the arbitrator's discussion of batch plant inspections arguably supports defendant's, not plaintiffs' view of the issues in the instant dispute. The arbitrator appeared to rest his finding on the fact that off-site concrete batch plants do not need to be inspected by a licensed deputy building inspector. Second, the arbitrator framed the bolt testing and water control inspection issue as principally a dispute about "the status of Appendix B to the contract." See Pls.' Ex. 12 at 5 (noting further that "[t]his appendix lists both bolt testing and water control work as covered work"). Rather than rejecting the licensing dichotomy proposed by defendant, as plaintiffs claim, the arbitrator rested his finding on the explicit language of Appendix B, a finding that defendant does not dispute here. The arbitrator simply did not reach the issue in the fashion that plaintiffs' claim he did.

Accordingly, the Court finds that collateral estoppel does not apply to the issue of whether "the only work covered by its Agreement is that work which requires a license of a deputy building inspector." Instead, the Court must determine this issue de novo.

### B.    Covered Employees under the CBAs'

Central to adjudicating the present dispute is the meaning of the CBAs that pertain to the relevant time period of this ERISA contribution dispute. Both parties argue that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|---|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

the language of the CBA is unambiguous and supports their interpretation, as set forth more fully below.[7]

## 1.    Plaintiffs' Coverage Arguments

In short, plaintiffs' argument is that the CBAs cover "bargaining unit work traditionally performed by the Building/Construction Inspector, which historically includes both work that requires a deputy license and some related work that does not." Pls.' Reply at 5.  Therefore, in plaintiffs' view, defendant owes fringe benefit contributions for anyone to whom defendant assigned this "bargaining unit work"—whether that individual is licensed or not.  The key is to determine what comprises bargaining unit work.

First, plaintiffs assert that the CBA is unambiguous and supports only their interpretation: the agreement covers all field inspection work of the kind typically performed by Building/Construction Inspectors of concrete, steel, masonry, and non-destructive or grading inspection.  Pls.' Opp'n at 11.  Plaintiffs focuses first on *who* is covered, and then on *what types of work* are covered.  Plaintiffs argue that because Article I, definition three of an Inspector extends to "any employee or sub-employer performing work covered by this agreement," the agreement is not limited to licensed inspectors.  Id. at 10 (quoting the CBA).  Instead, under this clause, anyone performing "bargaining unit work" is covered by the Agreement.  Id.  This third definition is "a separate and distinct category of individuals covered under the Agreement."  Pls.' Reply at 4.

Plaintiffs then argue that definition three must be read in conjunction with Article VII of the CBA, pertaining to sub-employers.  Plaintiff's Ex. 1 at 8–9; Def's Ex. 1 at

---

[7] The parties dispute the admissibility of much of the underlying evidence or testimony of their arguments regarding the extrinsic evidence that supports their respective  positions.  See Pls.' First and Second Set of Objs.; Def.'s Objs. To Pls.' Evid. Given the Court's conclusions below, however, the Court deems it unnecessary to consider these disputes at this time except where otherwise noted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

8–9.[8] Plaintiffs argue that Article VII, Section A supports their claim that defendants must pay fringe benefit contributions for anyone who performs "covered work," regardless of whether that person is a member of Local 12 or whether that person is a licensed inspector. Pls.' Opp'n at 11. Plaintiffs contend that "[t]he driving force is the type of work performed," not the licensure status of the person performing the work. Id. at 10.

Next, plaintiffs argue that the covered *work* under the agreement includes all field work inspection typically performed by Building/Construction Inspectors of concrete, steel, masonry, and non-destructive or grading. Plaintiffs point to the subparagraph under

---

[8] This article states that:

A. The Employer shall not sublet any part or portion of his work covered by this Agreement to any other Employer or Sub-Employer or to independent contractors. . . or use any of his supervisors or other non-unit employees in the performance of such work.

\*\*\*

C. Regardless of the source from which Building/Construction Inspectors or Sub-Employers are obtained, the Employer agrees to pay each Building/Construction Inspector or Sub-Employer the minimum wage, travel pay, mileage pay, subsistence and fringe benefits that are contained in this Agreement . . .

D. All Building/Construction Inspectors employed by the Employer shall be considered as employees and shall be entitled to all provisions of this Agreement including but not limited to all travel pay, subsistence, fringe benefits and the Employer shall withhold all payroll deductions as required by State and Federal Law.

Id. The omitted section sets forth the procedures for hiring "non-unit employees" in the event that SEC lacks sufficient personnel on staff or is unable to immediately hire sufficient qualified Deputy Inspectors to perform the work. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|----------|----------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

Article I, definition two as including "all forms of construction inspection work, however such work may be referred to by the Employer"—which is not limited to only that work which requires a license to be performed. Id. at 12; see also id. at 13 ("all of the work of a Building/Construction Inspector, whether it requires a license or not, is covered").[9] The parties could have easily stated otherwise, plaintiffs argue, had they intended for the agreement to be so limited.

Plaintiffs also argue that the first paragraph of Appendix B supports their interpretation as to the covered work under the agreement. Again, plaintiffs reiterate that this appendix does not setup a dichotomy between licensed (covered) and unlicensed (uncovered) work, but instead refers to "any similar duties performed by employees" and "other tasks pertaining to the completion of the work" covered by the agreement. Id. at 13. This language supports their position and illustrates the broad scope of the agreement's coverage, plaintiffs contend, because the many duties of a Construction Building/Inspector could never be fully enumerated in the agreement.

Combining Article I, Section A, and Section B, definition one, plaintiffs' principal contention is that the agreement applies to: "all field work inspection by Licensed and/or Registered Deputy Building Inspector[s]," whether or not the individual performing the work is licensed. Thus under plaintiffs' interpretation, if licensed inspectors *typically* were performing *some* types of inspection or related work that did not require a license, this work would be covered by the agreement— even when defendant used an *unlicensed* employee or subcontractor to perform this "nonlicensed work."[10]

---

[9] This subparagraph modifies all of subsection B, in the plaintiffs' view.

[10] Plaintiffs also offer a declaration from Steve Billy, the former Local 12 negotiator and Trustee, in support of their favored interpretation of the CBA and as evidence of the parties' intent. See Decl. of Steve Billy ISO Pls.' Mot. However, the Court finds these opinions carry little weight as against the plain terms of the contract. See Northwest Administrators, Inc. v. San Bruno Garbage Co., Inc., 312 Fed. Appx. 916, 918 (9th Cir. 2009) ("[T]he Trusts interpretations of the CBA is not entitled to any deference or evidentiary value."); Pace v. Honolulu Disposal, 227 F.3d 1150, 1158 (9th Cir. 2000) ("Although the parol evidence rule is not applied as strictly in the context of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|---|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

Taken together, the covered work according to plaintiffs is *all* of the work typically and historically performed by members of the bargaining unit, regardless of *who* actually performs the work. Some of this work requires the person performing the work to have a license, *and some does not*, but plaintiffs contend that this point is immaterial, because if the parties had wanted to limit the coverage to only licensed inspectors they could have easily done so.[11]

Thus under plaintiffs' interpretation of the CBAs, defendants failed to pay contributions to the Trusts for covered employees, because these employees were performing certain tasks typically performed by licensed building/construction inspectors. These categories of work in parts E, F, and G include: fireproofing, adhesion and cohesion testing, high strength bolt testing, torque testing, proof load testing, pull testing, water control inspection, steel shop inspection, epoxy dowel inspection, expansion bolt inspection, and any work by project inspectors. See Pls.' Reply at 5–7; Declaration of Michel Babel ("Babel Decl. No. 1") ¶¶ 10–14. Plaintiffs' also have submitted a claim for work described as "tech out of shop" or "lab tech away", because sub-employees who performed this type of work *also* performed covered work according to plaintiffs' interpretation of the CBA. Id. at 7; see Babel Decl. No. 1 ¶¶ 10–14.

## 2. **Defendant's Coverage Arguments**

Defendant also moves for summary judgment on the coverage issue, arguing as follows: First, the CBAs by their plain terms cover only licensed deputy building inspectors or work required to be performed by such inspectors. Second, none of the workers listed in parts E, F or G of the audit are licensed deputy inspectors. Third, none of the work performed by these same workers was work that only a licensed deputy inspector could perform.

---

collective bargaining agreements, it still operates to bar extrinsic evidence of an agreement inconsistent with an unambiguous writing.").

[11] Both parties offer an extensive discussion of the extrinsic evidence that supports their respective positions; given the Court's conclusion however, this evidence is unnecessary or irrelevant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|---|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

First, defendant argues that *who* are covered under the CBAs is limited to licensed deputy building inspectors.  Starting from Article I, Section A, defendant contends that "all field work inspection by building/construction inspector" is limited by definitions one, two and three.  Under definition one, defendant argues that in a geographic area where inspectors are licensed by a government entity, the only covered employees are licensed inspectors, and no one else.  Accordingly, definition two only applies to work performed in those geographic areas where the local government entity does not license Building/Construction inspectors.  Because all the underlying work was performed in areas where "Building Officials/Departments license Building Inspectors," defendant argues that only definition one applies.  Defendant argues that if non-licensed inspectors are intended to be covered, two alternative definitions for jurisdictions which do and do not license inspectors would never have been provided; any other interpretation than defendant's would render this language superfluous.  Def.'s Reply at 8.

Definition three, according to defendant, defines covered employees where defendant decides to subcontract what would otherwise be covered work.  Def.'s Mot. at 12.  The key to this definition is its circularity: by extending coverage to "any employee or subemployer performing work covered by this Agreement," definition three refers back to "Coverage" of section A, which in turn requires reference to definitions one and two in section B.  Id. (quoting the CBAs).  Definition three does not expand coverage beyond these definitions, but merely ensures that subcontractors performing work encompassed by definitions one and two are also covered by the CBA.  Id.

Defendants further argue that this licensed/unlicensed dichotomy is supported by other parts of the CBAs.  First, Article III refers to licenses in a number of sections.  Section C refers to the "type of license required" by various authorities in granting SEC the authority to freely hire new employees.  Section D requires the employer to provide a letter to Local 12 stating "the License expertise that employee has acquired."  Section E also requires listing the "Licenses of workmen" for an out-of-work list.  Second, defendant contends that the licensing requirement is supported by Appendix B, which only "describes inspection work for which an Inspector's License clearly is required."  Id. at 14.  Appendix B thus does not expand covered work beyond "licensed" work.

Turning to the hours claimed in plaintiffs' audit, defendant asserts it properly paid contributions for all work performed by SEC's licensed deputy building inspectors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|----------|------------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

Defendant argues that most of the work claimed in audit parts E, F, and G was performed by SELabs technicians, who are unlicensed and did not perform any work required to be performed by a licensed deputy building inspector. Def.'s Mot. at 17. Other employees claimed in the audit under the employ of other subcontractors performed only "nonlicensed work" as well, or were "inspectors of record" not covered by the agreements. Id. at 17–18. In sum, defendant argues that none of the subcontracted work was of the type required to be performed by a licensed deputy building inspector, and therefore, defendant was not obligated "to make benefit contributions for any of the work listed in parts E, F, or G of the revised [a]udit." Id. at 19.

### 3.      Interpretation of the Agreements

Federal common law governs the interpretation of the CBAs at issue in this litigation, the fundamental rules of which are clear. First, "written terms are ambiguous only if multiple reasonable interpretations exist, in light of the entire agreement's language, structure, and stated purpose." Trustees of the S. Cal. IBEW-NECA Pension Trust Fund v. Flores, 519 F.3d 1045, 1047 (9th Cir.2008). Moreover, a party may not "isolate terms of a collective bargaining agreement in order to create an ambiguity where none exists." Id. Only if a term or clause of a contract is ambiguous may a court consider extrinsic evidence to determine the parties' intent at the time the agreement was executed, including "earlier negotiations, later conduct, related agreements, and industrywide custom." Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge, 827 F.2d 1324, 1327 (9th Cir. 1987). Furthermore, when such an ambiguity is found "and contrary inferences as to intent are possible, there exists an issue of material fact for which summary judgment is ordinarily inappropriate." Arizona Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co., 753 F.2d 1512, 1518 (9th Cir. 1985). In addition, when interpreting CBAs, the policy goals of ERISA are "best effectuated if collective bargaining agreements are interpreted and enforced in a uniform manner." Kemmis v. McGoldrick, 706 F.2d 993, 997 (9th Cir. 1983).

At the outset, the Court notes that both parties agree that a "Licensed Deputy Building Inspector" is a legal classification, defined in the California Building Code. See, e.g., Def.'s Reply at 2; Pls.' Objections to Def.'s Decls. ISO Def.'s Mot. 17 ("The requirements for becoming a Deputy Building Inspector are set by statute. . ."); id. at 19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|----------|------------------------|--|------|-------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

("The types of work required to be performed by licensed deputy building inspectors are set by statute. . .").  These individuals are also known as "special inspectors" throughout the code, a term that is synonymous with "licensed" or "deputy" building inspector.  See, e.g., Def.'s Supp. Brief at 3.

In interpreting the CBA, the Court is confronted with two dichotomies.  The first dichotomy arises from the nature of the *work* being performed.  As noted, some work is "testing" work, and some work is "inspection" work; some work requires a "license," other work does not.  See Def.'s Supp. Brief at 1–3 (citing Interpretation of Regulations Manual 17-4, Def.'s Supp. Ex. B).  Determining whether a license is available or required for a given type of work is a complicated undertaking, requiring an understanding of: (1) the jurisdiction where the work is being performed; (2) the type of project (e.g., hospitals vs. an office building); and (3) the type of inspection or testing work.  See Pls.' Supp. Brief at 6–7 (discussing the interplay of California Building Code §§ 1704A and 1707A with municipal building codes, Division of the State Architect standards (for schools), and Office of Statewide Health Planning & Development (for hospitals).

The second dichotomy arises from the nature of the *persons performing the work*. Some individuals are licensed inspectors for particular fields of inspection work, other individuals are not licensed at all.  Defendant SEC maintains a cadre of licensed building inspectors, or "special inspectors," and has a sister entity, SELabs, that is a licensed testing laboratory—staffed by individuals without an inspection license.

Turning to the CBAs at issue here, section A states that the agreement "shall apply to all field work inspection by Building/Construction Inspectors" ("BCI") of certain materials and construction work.  Pl.'s Ex. 1 at 2.  Section A says nothing about certain work "requiring"a license or not, contrary to defendant's contentions.

Section B sets forth three definitions of a BCI.  Under the first definition, a BCI is a *licensed* or *registered* BCI in "those areas" where BCIs are licensed.  Id.  Under the second definition, in "those areas" where BCIs are *not licensed*, a BCI is an inspector who performs the same duties as a licensed or registered BCI.  As noted, licensing regimes can be broken down across a number of dimensions; to determine whether an "area" licenses an inspector, therefore, requires an inquiry along all of these dimensions. As with Section A, the Section B definitions one and two are *silent* as to whether certain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                          O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|---|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

*work* is covered based on whether a license is available or not (in that jurisdiction and for that type of work). And unlike Section A, Section B is focused solely on the classification of the *individuals* performing the work, or dichotomy number two.

The meaning of both definitions depends on what is meant by the phrase "all field work inspection by licensed or registered Building/Construction Inspectors of concrete, steel, masonry work and non-destructive and/or grading inspection. . ." in Section A. Id. This phrase will be called the "Coverage Definition." Neither party disputes that the agreement covers "all field work inspection" by BCIs—the dispute is over *what* work is encompassed within this Coverage Definition.

Under Section B, definition three, the scope of the agreement's coverage is extended to "any employee or sub-employer performing *work covered by this agreement*," including a number of specifically-listed types of work. As such, the meaning of definition three appears to be completely dependent on the Coverage Definition, because it depends on *what work* is covered under the agreement. Thus the crucial inquiry remains: what does the Coverage Definition mean?

The Court finds that contrary to defendant's contentions, nothing in the Coverage Definition's plain language limits the agreement's scope to field work inspection required to be performed by licensed inspectors. Instead, the definition clearly contemplates that the field work inspection of licensed individuals—whether such work requires a license or not—will be covered. In addition, Section B, definition three extends coverage to any *unlicensed* individual who is performing the "field work inspection" of licensed inspectors; this includes individuals to whom defendant has subcontracted work that falls within the scope of the Coverage Definition.[12] Stated otherwise, defendant is correct that

---

[12] Relatedly, definitions one and two in Article I, Section B are not rendered superfluous by the Court's interpretation of the plain language of the agreement, contrary to defendant's argument. See, e.g., Def.'s Reply at 8. Regardless of whether a particular inspector has a license for a particular type of work—which depends in part on the geographic area in which the work is performed—any person employed by defendant or a subemployer of defendant who is performing the type of work encompassed within the scope of Coverage Definition is covered by the CBA. Thus, that the agreement contains

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|----------|------------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

the CBA only covers *the work* of defendant's licensed inspectors (as defined in the Coverage Definition), but "the work" of licensed inspectors may include certain types of work that does not require a license at all. And under Section B, definition three, the CBA extends coverage to unlicensed *individuals* to whom defendant subcontracts any of this work, including work for which a license is not required.

This conclusion is buttressed by Appendix B. This appendix sets forth "sets forth general descriptions of inspection and testing work covered by this Agreement." Pl.'s Ex. 1 at 24. Thus, Appendix B helps to define the scope of the Coverage Definition—by making explicit what "inspection and testing work" comes within the rubric of "field work inspection by licensed BCIs." In addition to specifically listing certain types of inspection work, Appendix B also extends coverage to "other tasks" pertaining to the completion of the inspection work described in the Appendix. Nowhere does this appendix limit the CBA's coverage to work "required" to be performed by a licensed building inspector. Moreover, any doubt about whether the agreement extends to testing work performed by licensed BCIs is resolved by Appendix B's unequivocal inclusion of certain types of inspection and testing work—regardless of the license needed to perform the work—and despite defendant's protestations to the contrary.[13] Because the Court finds that this interpretation is unambiguously supported by the plain text and structure of the agreement, resort to extrinsic materials is inappropriate.

---

two different definitions for the *individuals* who are covered, depending on where the work is performed, is consistent with the Court's interpretation.

[13] In its supplemental brief, defendant advances a new argument that relies heavily on the distinction between "testing" versus "inspection" work. See Def.'s Supp. Brief at 1–4. Even if the distinction between testing and inspection work is based on a legal dichotomy contained in the California Building Code, as defendant now contends, defendant's argument fails to account for Appendix B of the agreement. The first sentence in this appendix bears repeating: "The following are intended as general descriptions of inspection *and testing* work covered by this Agreement." Pl.'s Ex. 1 at 24 (emphasis added). See also Pls.' Ex. 12 at 5 (arbitrator's award describing the work in question as "bolt testing inspection" work).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

### 4.    The Scope of the Coverage Definition

Having determined as much, the question remains as to what types of work fall under the umbrella of the Coverage Definition, which defines the work that is covered by the CBA.  The covered work can be broken down into three categories: (a) work that is unambiguously covered by the agreement; (b) work that is covered by the agreement based on the extrinsic evidence submitted by plaintiffs; (c) work that may be covered by the agreement, but where plaintiffs have not met their burden for summary judgment. Each of these categories is discussed in turn.

### a.    Types of Work That Are Unambiguously Covered

First, for some of the categories of work for which plaintiffs' claim benefit contributions in the audit, the agreement unambiguously covers this work.  As a matter of law, plaintiffs' have met their burden of demonstrating that these types of work are covered, and therefore the Court finds that summary judgment for plaintiffs is appropriate.

(1) Sprayed-on fireproofing inspection is covered work because it is listed in Appendix B to the agreement.  Pls.' Ex. 1 at 38.

(2) High strength bolt testing is specifically listed in Appendix B and is therefore covered work under the agreement.  Pls.' Ex. 1 at 31; Ex. 12 at 6.

(3) Water control inspection is covered by the parties agreement, because the arbitrator found it to be covered under Appendix B.  Pls.' Ex. 12 at 6, Arbitration Decision ("water control inspection [is] bargaining unit work"); Ex. 1 at 41.  The parties do not dispute this finding here.  This work is part of the work of a concrete inspector. Decl. Valenti ¶ 13.[14]

---

[14] The Court overrules in part and sustains in part defendant's objections to Valenti's declaration.  Valenti may testify as to his personal experience in the construction industry and as a Smith-Emery inspector, although he may not testify as to the proper legal interpretation of the agreement.  As much of his testimony regarding his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|----------|----------------------|---|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

(4) Steel shop inspection is specifically listed (and described in detail) in Appendix B, and is therefore covered work. Ex. 1 at 29.

> **b.** **Types of Work Where Agreement is Ambiguous, But Plaintiffs Have Met Their Burden of Demonstrating Coverage**

Second, some of the work claimed in plaintiffs' audit is not ambiguously covered by the plain language of the agreement, but the Court finds that extrinsic evidence supports granting summary judgment to plaintiffs on these categories of work. Torque testing and anchor bolt testing are not explicitly listed in Appendix B, but the Court finds that the work is covered by the parties agreement, because James Partridge, CEO of defendant, admitted as much at his deposition. See Ex. 119, 154:16–155:15 (noting that the work is covered by Appendix B). Defendants offer no evidence to the contrary, and therefore the Court finds that plaintiffs have thus met their burden as to this type of work.

> **c.** **Work For Which a Disputed Issue of Fact Remains as to Coverage Under the Agreement**

Third, plaintiffs have not carried their burden of proving that no rational trier of fact could find for defendant for the remaining categories of inspection and testing work claimed in the audit. Therefore, the Court finds that summary judgment is inappropriate for either party on the issue of whether these particular categories of work are covered.

(1) Plaintiffs have not carried their burden with respect to adhesion and cohesion, proof load testing, pull testing, epoxy dowels, steel framing and backing, or expansion bolt inspection work. Defendant's argument again rests on the license required to perform this type of work, see Def.'s Ex. C, Decl. of John Latiolait ¶ 6, which the Court

---

knowledge of the various types of work at issue based on his personal experience as an inspector, the Court overrules defendant's objection to any testimony relating Valenti's own perceptions and knowledge.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

has found to be unavailing.[15]  Therefore, summary judgment is inappropriate for defendant for the same reasons the Court has already rejected this argument.  However, plaintiffs have not submitted sufficient evidence for a grant of summary judgment in their favor for these types of work—a single declaration from a former Smith-Emery inspector is simplify insufficient on summary judgment.  Plaintiffs' other evidence—a Smith-Emery "Inspection Task List" and references to the Appendix that are largely unexplained—is also insufficient.  See Pls.' Reply at 5–7.  It is likely that some of this work is covered by the CBA, particularly if the work is related to tasks specifically set forth in Appendix B, but the Court is unable to award summary judgment based upon plaintiffs' current showing.

(2) Most if not all "building inspection" is likely covered by the agreement—indeed, the entire agreement is geared towards describing the work of "Building/ Construction Inspectors," which must by definition include some "building inspection," Pls.' Ex. 1 at 2.  However, whether all of the "building inspection" work claimed in plaintiffs' audit is work that falls within the Coverage Definition ("field work inspection by Building/Construction Inspectors") remains an open, fact-dependent question.  The meaning of this vague phrase is not evident from the agreement itself, nor from extrinsic evidence that plaintiffs have submitted.  Thus, the Court finds that plaintiffs' have not carried their burden with respect to this type of work.

(3) For similar reasons as those stated for the building inspection category, the Court finds that it is ambiguous to what extent work labeled as "project inspection" is covered work under the CBA.  Because plaintiffs have not presented sufficient evidence demonstrating either of these types of work to be covered, summary judgment is inappropriate.

---

[15] The Court overrules plaintiffs' objections to the Declarations of John Latiolait, and Marinette Cruz on the grounds that they were designated as a potential witness after the Rule 26 conference.  Any such late-designation was harmless here.  See Luke v. Family Care & Urgent Medical Clinics, 259 F.3d 1101, 1106 (9th Cir. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|---|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

C.     **Statute of Limitations and the Discovery Rule**

In ERISA actions, federal courts apply the state statute of limitations for breach of a written contract; California provides a four-year statute of limitations. No. Calif. Retail Clerks Union Pension Trust v. Jumbo Markets, 906 F.2d 1371, 1372 (9th Cir. 1990). "Because the cause of action is federal, however, federal law determines the time at which the cause of action accrues." Id. Thus, a plaintiff's claim accrues, and the statue of limitations begins to run, when "the plaintiff knows or has reason to know of the injury that is the basis of the action." Id. The "injury" in an ERISA action is the breach of the agreement requiring payment to the trusts. See Price v. Provident Life & Acc. Ins. Co., 2 F.3d 986, 988 (9th Cir. 1993). Therefore, the relevant inquiry here is "the time at which the Trust Funds [knew or] had reason to know of [any] underpayment." Jumbo Markets, 906 F.2d at 1372; see also Connors v. Hallmark & Son Coal Co., 935 F.2d 336, 343 (D.C. Cir. 1991) ("[T]he Trustees' claims accrued only at the time when, in the exercise of due diligence, the Trustees would become aware of [defendant's] alleged inaccuracies.").

Defendant contends that plaintiffs had reason to know of at least some of the alleged underpayment to the trust fund as early as March 2003. In support of this contention, defendants offer a memorandum dated March 25, 2003 from Steve Billy (then a Trustee and treasurer of Local 12) to Alex Acevado (Trustee's office manager) "requesting an audit of Smith-Emery as soon as possible. Attached please find a copy of the information that I am basing my claim on. . ." Def.'s Ex. N. Attached to the memorandum are a request for records related to "E-Smith," which based on Smith-Emery's response, appears to be related to Smith-Emery Laboratories. Id. Thus, defendant argues, plaintiffs had reason to know of any underpayment as early as March 2003; as such, any claims prior to March 2005 are time-barred. Def.'s Mot at 25. In the alternative, defendant argues, this memorandum raises a disputed issue of material fact that precludes granting summary judgment to plaintiffs on pre-March 2005 contribution claims. Def.'s Opp'n at 25.

Plaintiffs contend they did not have reason to know of any underpayment until the original audit was completed on July 8, 2011, because defendant timely submitted monthly reports and paid contributions based upon the hours it had reported for the entire time period at issue. Pls. Reply at 12. Since defendant appeared to pay contributions for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|----------|------------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

all the hours worked by covered employees and sub-contractors according to defendant's records, nothing appeared amiss to plaintiffs.

At the outset, the Court rejects plaintiffs' argument that they had no reason to know of any delinquent contributions until *after* the audit at issue in this litigation was completed in July 2011.  At a minimum, plaintiffs had reason to know of missing contributions once they decided that an audit was necessary, not after the audit was completed.  Jumbo Markets, Inc., 906 F.2d at 1373.  The question depends "on the facts known to the Trust Funds from which they reasonably should have known that there was past substantial error."  Id.; see also Michigan United Food & Commercial Workers Unions v. Muir Co., Inc., 992 F.2d 594, 599 (6th Cir. 1993) ("[T]he crucial question in this case is whether the Funds had sufficient notice of probable discrepancies in the employer's contribution reports. . .").

The parties dispute the admissibility of the 2003 memorandum, which was produced to both parties by Local 12 in response to a subpoena.  At this stage, the Court finds that defendant has met the minimum threshold for authenticating the memorandum and the attached documents.[16]  The 2003 memorandum raises a triable issue of fact as to

---

[16] Defendants contend that attached to the memorandum were several documents referring to SELabs work, which formed the basis of Billy's concerns.  See Def.'s Ex. N. Plaintiffs argue that defendant has failed to authenticate the memorandum and it must be stricken.  Additionally, plaintiffs contend that defendant has failed to lay any foundation as to the documents which were purportedly attached to the memorandum, and that these are therefore inadmissible as well.  Pls.' Reply at 11; Pls.' Second Set of Objs. to Def.'s Evid. at 9–10.

Because all defendant need do here is make a showing "sufficient to support a finding that the matter in question is what [defendant] claims" it to be, Fed. R. Evid. 901(a), the Court finds that defendant has carried its burden as to the memorandum and the purportedly attached documents.  See also Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 533 (9th Cir. 2011) (holding that documents may "authenticated by review of their contents if they appeared to be sufficiently genuine," pursuant to Federal Rule of Evidence 901(b)(4)).  Defendant obtained the memorandum in question from Local 12,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|---|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

whether the Trustees knew or had reason to know of any of the alleged underpayment before they initially requested an audit in 2005, Pls.' Ex. 13, which eventually led to the filing of this lawsuit in 2009. If Trustees in fact had information at their disposal that did or should have put them on notice in 2003 of the alleged underpayment complained about in this case, or at least the alleged deficiencies regarding SE Labs employees, then all or part of their claim likely accrued in or about March 2003. Any part of Trustees claim that accrued in or around March 2003 would be time-barred. If instead plaintiffs had no knowledge of any underpayment complained of in this lawsuit until 2005, when they first formally requested an audit, none of their claims would be time-barred by the four-year statute of limitations.

Moreover, plaintiffs have no duty under the agreement or ERISA "to make an independent verification. . . if the facts known to them did not give them reason to know of the error." <u>Jumbo Markets, Inc.</u>, 906 F.2d at 1373.[17] For example, plaintiffs may be able to prove that they considered requesting an audit in 2003 for reasons unrelated to this lawsuit, such that they had no reason, in 2003, to know of any underpayment at issue

_____

who, although not a party to this action, is a sufficiently reliable source from which to obtain documents allegedly sent to them by the Trustees concerning the subject matter of this action. <u>See</u> Mitchell Decl., Def.'s Ex. O. In addition, the Court notes that plaintiffs have not affirmatively contested the authenticity of the memorandum (for example, by submitting testimony from Billy to the contrary), but instead have only argued that defendant's showing is insufficient. <u>Orr v. Bank of Am., NT & SA</u>, 285 F.3d 764 (9th Cir. 2002), is not to the contrary. There, documents produced in discovery in another action—and produced by an unknown party—were found not to be properly authenticated. Here, unlike in <u>Orr</u>, the documents were produced by Local 12 as responsive to defendant's subpoena; the contents of these documents, taken in conjunction with the circumstances in which the memorandum was produced, are sufficiently authenticating under Federal Rule of Evidence 901(b)(4).

[17] Plaintiffs have a right to request an audit of defendant pursuant to Section XVIII of the CBA. Plaintiffs requested an audit on three prior occasions before instituting the instant suit, the first being in 2005. <u>See</u> Pls.' Ex. 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|---|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

in this case.[18]  This will depend on what facts were known to the Trusts, when these facts were known, and whether these facts sufficed to put Trustees on notice of any of their potential claims—facts that are presently unknown or disputed.  Id.; see also Masonry Indus. Trust Admin., Inc. v. Woodburn Masonry, Inc., 116 F.3d 484 (9th Cir. 1997) (statute of limitations governed by discovery rule presents a "mixed question of law and fact").  The disputed 2003 memorandum does not conclusively answer these questions. Therefore, as was the case in Jumbo Markets, the Court is unable to determine when the Trusts knew or had reason to know of the underpayment on this record.  Accordingly, the Court finds that summary judgment for neither party is appropriate on the issue of whether any claims made in plaintiffs' audit are time-barred.

### D.    Cash Disbursements and Part K

#### 1.    Parties' Arguments

Part K of the audit claims that defendant is liable for benefit contributions for hours worked by a number of subcontractors.  These claims arise out of certain hours that plaintiffs's auditor, Michael Babel, found listed in "cash disbursement" journals of defendant, for which defendant did not make contributions to the Trusts.  The parties do not dispute that the type of work at issue is covered by the parties agreement, but they do dispute whether this work was performed in one of the covered Southern California counties under the CBA.  See Pls.' Opp'n at 20; Def.'s Mot. at 23; Pls.' Ex. 1 at 2.

According to Babel, he based his claims on the jurisdiction listed in the cash disbursement journals of defendant, if such information was available.  See Pls.' Ex. 121, Depo. of Michael Babel, 359:15–25.  If he determined that the work took place outside of

---

[18] Plaintiffs also offer a declaration from Bernardo Ramos, the Director of the Employer Compliance Department of the Trusts, in support of their contention that plaintiffs had no knowledge of any deficiencies until the audit was completed.  Decl. of Bernard Ramos ¶ 15; Pls.' Responses to Def.'s Objs.' at 1.  The Court overrules defendant's objections insofar as Ramos is testifying based on his personal knowledge as to whether he or anyone in his department had knowledge of any alleged deficiencies; in any event, disputed issues of fact remain on this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|---|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

Local 12's jurisdiction based on the supporting invoices provided by defendant, he made no claim in the audit. If no supporting invoices were available from SEC, however, Babel presumed that the work took place within Local 12's jurisdiction and claimed this work in the audit. Id. at 361–62; see also Babel Decl. ¶ 17; Opp'n Decl. of Michael Babel ¶ 9.

Defendant has moved for summary judgment as to work performed by only one of these subcontractors, Forest Products, arguing that all of the work that Forest Products performed was outside of Local 12's jurisdiction and therefore not covered by the CBAs. Def.'s Mot. at 22. As to plaintiffs' motion for summary judgment, defendant in opposition argues that plaintiffs' evidence is insufficient because Babel's declaration fails to satisfy the Fed. R. Civ. Procedure 56(c)(4) requirements.[19] Def.'s Opp'n at 19 (citing to Declaration of Michael Babel). Specifically, defendant argues that Babel fails to demonstrate how he concluded that only "non-signatory inspection companies" are included in the audit, such that contributions would not have already been paid to any union trust funds. If Babel has further documentation for how he came to this conclusion, defendant argues, it is entitled to see it. Further, defendant argues that Babel fails to show that his determination that all the subcontracted work he claimed fell within Local 12's jurisdiction is based on his personal knowledge or that he is competent to testify as to this conclusion. Def.'s Opp'n at 20. In addition, defendant argues that Babel offers no justification for his use of a $75 hourly rate for all the claimed hours in part K of the audit. Taken together, defendant argues that plaintiffs fail to carry their burden of establishing the essential elements of their claim.

In response, plaintiffs argue that because defendant has failed to maintain adequate records, as required by 29 U.S.C. § 1059(a)(1), the burden is on defendant to demonstrate the number of hours at issue if they contest plaintiffs' damage calculations, not the Trustees. Pls.' Opp'n at 19–20; Pls.' Reply at 9–10. Plaintiffs' auditor states that in addition to reviewing the cash disbursement journal, he found at least one invoice from

---

[19] This rule states that "[a]n affidavit or declaration used to support or oppose a motion must be made [1] on personal knowledge, [2] set out facts that would be admissible in evidence, and [3] show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

Forest Products that, in combination with defendant's "other records," convinced him that at least *some* of the Forest Products work at issue was performed in Local 12's jurisdiction.  Babel Opp'n Decl. ¶ 9.  This, plaintiffs argue, is sufficient to shift the burden to defendant to produce contrary evidence.[20]

    **2.**    **Analysis**

    The Ninth Circuit in <u>Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.</u>, 839 F.2d 1333 (9th Cir. 1988), adopted a burden shifting approach for determining whether a trust has provided sufficient evidence to support its damages determination.  Under <u>Brick Masons</u>, "once the trustees produce evidence raising genuine questions about the accuracy of the employer's records and the number of hours worked by the employees, the burden shifts to the employer to come forward with evidence of the precise amount of work performed."  <u>Id.</u> at 1338; <u>see also</u> for <u>Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc.</u>, 259 F.3d 1063, 1066 (9th Cir. 2001) (stating the test as "once the Trustees show (1) that [defendant] failed to keep adequate records, and (2) that there exist some employees who (a) performed covered work that was (b) unreported to the trust funds, then the burden shifts to [defendant] to show the extent of the unreported covered work for those employees").  Courts have adopted this burden-shifting approach in the ERISA context so that "[a]n employer cannot escape liability for his failure to pay his employees the wages and benefits due to them under the law by hiding behind his failure to keep records as statutorily required."  <u>Brick Masons</u>, 839 F.2d at 1338.

    Defendant does not appear to dispute plaintiffs' contention that defendant has failed to maintain adequate records for at least some of the time period at issue, pursuant

---

[20] Plaintiffs also objects to the testimony of Latiolait and Patridge regarding the location of the Forest Products work.  Although the Court notes that these declarants may testify as to their personal knowledge, as they have in their declarations, neither individual offered anything other than their speculative conclusions that Forest Products work took place outside of the CBA's covered jurisdiction.  <u>See</u> Decl. Patridge ¶ 19; Decl. Latiolait ¶ 7.  This is insufficient for a grant of summary judgment in defendant's favor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

to 29 U.S.C. § 1059(a)(1). Plaintiffs have submitted declarations from their auditor who testified that some entries in the cash disbursement journal were not accompanied by any supporting invoices provided by defendant. In fact, defendant has admitted to disposing of its invoices and many other relevant records dated prior to January 1, 2007. See Deposition of James Partridge, Pls.' Ex. 119, 112:9–119:15, 169:17–170:2; Ex. 120, 45:4–46:14. As the Ninth Circuit has noted, "[i]f the records did, in fact, exist, [defendant] could simply have produced them, thereby refuting the Trustees' threshold showing. But it did not." N.T. Audio Visual, 259 F.3d at 1066. Similarly, defendant here has offered only the declarations of its President and an employee in response to plaintiffs' showing, but not any of the underlying records to support defendant's contentions. This is insufficient as a matter of law.

Under the next part of the test, the burden remains with the plaintiffs to demonstrate that there exists at least some employees who performed covered work that went unreported to the Trusts. Id. at 1066. The parties here do not dispute that the work subletted was a covered *type* of work under the CBA, at least with regards to Forest Products Inspection; however, they dispute whether this work was performed *in Local 12's jurisdiction* or by non-signatory inspection companies. In Brick Masons, for example, the court found that the trusts made the requisite showing by "submitting testimony by employees who performed the unreported work." 839 F.2d at 1340. On the other hand, the court in N.T. Audio held that the testimony of two auditors was insufficient to carry the plaintiffs' threshold burden. 259 F.3d at 1067. The auditors there "appeared to presume without any basis that all of these [unreported] hours were for covered work," but were unable to show that certain unreported cash payments to covered employees corresponded to covered work. Id. Accordingly, the court reversed the district court's grant of summary judgment for the Trusts.

The Court finds that summary judgment is not appropriate for either party for the work claimed in Part K of plaintiffs' audit. Plaintiffs' evidence is not sufficient to demonstrate that any of the claimed hours here correspond to covered work, as plaintiffs' showing suffers from the same defect at issue in N.T. Audio, 259 F.3d at 1067. As the N.T. Audio court noted, a plaintiff must actually prove the "fact of damage" to qualify for burden-shifting under Brick Masons. Here, as in N.T. Audio, plaintiffs have only offered the testimony of their auditor that he presumed certain work

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|----------|------------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

listed in the cash disbursement journals was covered.  See, e.g., Babel Opp'n Decl. ¶ 9.[21]
Such testimony is insufficient to prove that the unreported hours necessarily respond to
covered work, and therefore plaintiffs have not proven "the fact of damage" here.
Because plaintiffs have not met their threshold burden, defendant's failure to keep
adequate records does not support a grant of summary judgment in plaintiffs' favor.  If
plaintiffs can prove that work in Part K of the audit took place in Local 12's jurisdiction,
then the burden would be on defendant to demonstrate "the amount of damages arising
from the statutory violation by the employer."  N.T. Audio, 259 F.3d at 1065 (citations
omitted).

Because defendant appears to have failed to maintain or destroyed records for the
work at issue, and instead only offers contested, circumstantial evidence, defendant is
also not entitled to a grant of summary judgment in its favor.  Genuine issues of material
fact remain as to whether any of the work claimed in Part K of the audit is covered by the
CBA.

**E.     Holiday Time**

Plaintiffs also contend that defendant failed to pay fringe benefit contributions for
all holiday hours worked by its employees.  See Babel Decl. ¶ 8.  Under the CBAs,
defendant must pay triple wages for any work done by covered individuals on a holiday,
but the contribution rate for these holiday hours remains the same as any other work day.
See Def.'s Ex. 1, 2001 CBA at 10.

Defendant argues that, in fact, it has paid all fringe benefit contributions for
holiday time—and that plaintiffs' auditor has mistakenly interpreted defendant's payroll
records.  Def.'s Opp'n at 14–16.  Defendant's argument is as follows.  Because ADP, the
payroll services provider, does not have a code for triple time in its payroll system, the
only way defendant can enter pay at triple the normal rate is to enter the hours worked

---

[21] Defendant's objections to the relevant portions of Babel's declaration here are
overruled.  See Def.'s Objs. to Pls.' Evid. at 8.  Plaintiffs' auditor may permissibly testify
to what steps he took in reviewing defendant and others' records and in preparing the
audit—he clearly has personal knowledge of this information.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

three separate times, under three separate codes: (1) regular hours; (2) holiday hours
(designated by an "H"); and (3) double time hours (designated by a "D"). Id. at 15; see
Def.'s Ex. M, Decl. of Helen Choe ¶¶ 3–4. Defendant then paid contributions only for
one of these time entries, as required by the CBA.[22] Thus to one unfamiliar with
defendant's payroll practices, defendant contends, it would appear that defendant has
failed to make the required contributions for all of the "H" hours, where in fact, defendant
has already done so. Def.'s Opp'n at 15. Defendant's Chief Financial Officer, Helen
Choe, provides a specific example in her declaration of how this accounting operates in
relation to the audit. See Choe Decl. ¶¶ 6–9 and Exs. A–D attached thereto.[23]

 In response, plaintiffs do not contest defendant's proffered explanation, but argue
that since defendant has a duty to maintain adequate payroll records, defendant has
breached this duty by maintaining records that "require convoluted oral explanation" to
be properly understood. Pls.' Reply at 11.

 The Court agrees with defendant that plaintiffs have not presented sufficient
evidence on this issue to justify a granting summary judgment in their favor. While it is
true, as plaintiffs argue, that they should be "to rely on payroll records to determine if
[defendant is] making the proper contributions to the trust funds," Waggoner v. C & D
Pipeline Co., 601 F.2d 456, 459 (9th Cir. 1979), this does not mean plaintiffs can simply
assume they are interpreting the payroll records correctly, without inquiring further.
Even if defendant acted in bad faith to forestall plaintiffs' efforts to conduct the audit or
failed to maintain adequate records, plaintiffs cannot claim hours for which they have no
evidence that they are entitled to so claim, in light of defendant's evidence that all benefit
contributions for holiday hours have already been paid. See N.T. Audio, 259 F.3d at

---

[22] Neither party disputes that the CBA requires payment to the Trusts based on the
number of hours worked, regardless of the pay rate for those hours. See the discussion in
section IV.F of this order.

[23] The Court overrules plaintiffs' objections to the Declaration of Helen Choe. See
Pls.' Second Set of Objections at 7. Whether or not Choe had personal knowledge of
defendant's payroll and accounting system at the time of her deposition, as Chief
Financial Officer of defendant, the Court finds she has demonstrated sufficient personal
knowledge of defendant's practices in this regard in her declaration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

1067 (noting that summary judgment is inappropriate where the Trustees have not proven "the fact of damage"). Accordingly, the Court denies plaintiff's motion for summary judgment with respect to any holiday hours claimed in the revised audit. Disputed issues of fact remain as to whether proper contributions have already been paid for these hours.

**F.      Travel Time and Audit Part B**

Plaintiffs also claim that defendant owes fringe benefit contributions for the travel time of certain employees. Based on a comparison of the contribution reports submitted by defendant and available payroll records, plaintiffs' auditor claimed certain travel time hours designated with a "T" for which no contributions were paid. Babel Decl. ¶ 8; Pls. Mot. at 6.

Defendants do not contest that contributions were not paid for all of its covered employees' travel time; however, defendant argues that under the CBA, contributions are owed for only certain types of travel. Construing the language of Article XII, section F of the CBA in conjunction with Article XII, section G, defendant argues that the CBA states that employees shall be "paid" travel time only for travel to and from covered jobsites. Def.'s Ex. 1 at 14. Because covered jobsites are defined in Article I, section A, as only those jobsites located in the listed Southern California counties, defendant argues that travel outside the Union's jurisdiction is not covered for contributions purposes. See Def.'s Mot. at 23–24. Because plaintiff does not demonstrate in its audit how the auditor distinguished between covered and uncovered travel time, defendant argues that under its coverage definition, plaintiffs' motion must be denied. In its own motion, defendant seeks a determination that the travel hours of one particular employee claimed in the audit, Ricky Morgan, are not covered for contributions purposes. Id. at 24.

The Court agrees with plaintiffs that defendant's argument is inapposite—the plain terms of the CBA require defendant to pay benefit contributions for all hours *worked by or paid* to covered employees. See 2001 CBA at 10, 14, 15 (defendant must "make payments to the Fund. . . for all straight-time or overtime hours worked or paid each employee under this Agreement). Both parties agree that nearly identical language has consistently been interpreted by the Ninth Circuit to require payment of fringe benefit contributions for all hours "worked by or paid" to covered employees, regardless of whether the hours pertained to covered work or not. See, e.g., Waggoner v. C & D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                     O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

Pipeline Co., 601 F.2d 456, 459 (9th Cir. 1979); Kemmis v. McGoldrick, 706 F.2d 993 (9th Cir. 1983). Therefore, if any of the employees claimed in Part B of the audit performed any covered work under the CBA and defendant paid these employees for their travel hours, defendant must pay contributions for these hours. The Article XII sections of the CBA to which defendant cites do not change this conclusion. These sections only set forth the conditions under which defendant *must* pay for travel time; once defendant *has paid* for the travel time of covered employees, defendant must also pay fringe benefit contributions. The CBA lends itself to no other interpretation.

Plaintiffs' auditor based his claim on a comparison of the certified ADP payroll records with the monthly fringe benefit contribution reports that defendant submitted to the Trusts. Babel Decl. ¶ 8. The auditor claimed any hours worked by covered employees, identified as such because they were listed in the contribution report provided to plaintiffs, for which defendant had not paid contributions. Defendant has not argued that the auditor included a claim for hours by employees who were not otherwise covered by the CBA, instead relying solely on its legal contention that only certain hours are covered for fringe benefit purposes. Plaintiff has thus carried its burden with regards to the claimed travel hours.

Accordingly, the Court denies defendant's motion for summary judgment with respect to the assessed travel time for employee Ricky Morgan, and grants plaintiffs' motion as to the issue of covered travel time for purposes of fringe benefit contributions.

### G.    LAUSD Contracts and Part H

Plaintiffs claim contributions are owed for work defendant performed on several public works projects for the Los Angeles Unified School District, projects which were covered by the Project Stabilization Agreement (PSA). Pls.' Mot. at 12. The PSA is an agreement between various unions and the LAUSD that requires covered employers to pay fringe benefit contributions to any established employee benefit fund, incorporating by reference the unions' CBAs. The PSA became effective in March of 2003 and covers all construction contracts made subject to its terms, which is limited to construction work "funded by Proposition BB and/or Measure K." Def.'s Reply, Ex. 5 at 425; Pls.' Ex. 89. The parties do not dispute that Local 12 is a signatory to the PSA, or that the applicable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|----------|----------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

CBA for work performed for the LAUSD by defendant is the Master Labor Agreement.[24] Defendant further does not dispute that "when it performed LAUSD work pursuant to a contract on which it was bound by the PSA, SEC would owe trust funds contributions for all its work." Def.'s Reply at 15. What the parties dispute is whether the PSA applies at all, based on the underlying contracts that defendant entered into with LAUSD.

### 1.    Plaintiffs' Arguments

Plaintiffs claim their audit seeks contributions for work performed on only a single LAUSD contract, specifically # 0410067. Pls.' Reply at 7. Plaintiffs make their claim based on a review of certified payroll records (CPRs) obtained from LAUSD pursuant to a subpoena which sought documents related to work performed under contract # 0410067. Pls.' Opp'n at 22. However, plaintiffs obtained CPRs from LAUSD that all had contract #0150020, *not* #0410067—except where # 0150020 had been crossed out and the # 0410067 had been written in by hand on the CPR. Id. at n. 7; see Pls.' Ex. 126. Plaintiffs contend, however, that the custodian of records for LAUSD has confirmed that these documents are for contract # 0410067, *not* #0150020. Id.; see Exs. 117 (plaintiffs' original subpoena to LAUSD) and 118 (declaration of the LAUSD custodian of records).

Furthermore, plaintiffs argue that whether or not defendant signed a letter of assent for contract # 0410067, defendant is bound to the PSA once it began work on a PSA-covered project, citing to section 2.5 of the PSA and the PSA's definition of "contractor."[25]   As plaintiff argues, "[o]ne violation of the PSA (failure to sign a letter of

---

[24]This Master Labor Agreement is *broader* than the CBAs at issue in this case, and it includes all building / construction inspector work, including "batch plant inspection" work not subject to the CBAs otherwise at issue here. See Pls.' Exs. 97, 98, 99. For this reason, the parties do not dispute that if the inspection work at issue is not covered by the PSA, the CBA between Local 12 and SEC does not cover the work at issue, such that SEC would not owe any unpaid fringe benefit contributions.

[25]PSA agreement section 2.5 provides that "all contractors and subcontractors . . . who have been awarded contracts for work covered by this Agreement, shall be required to accept and be bound by the terms [of this Agreement];" contractor is defined as "any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

assent) cannot excuse another (the failure to pay fringe benefit contributions)." Pls.' Reply at 8 (citing to <u>Trustees of S. Cal. IBEW-NECA Pension Trust Fund v. Flores</u>, 519 F. 3d 1045, 1048 (9th Cir. 2008) and three arbitration awards interpreting a similar, but distinct section of the 1999 PSA, Pls.' Exs. 122, 123, 124).

Under contract # 0410067, plaintiff claimed contributions for work described in the CPRs as "technician", among other categories. Plaintiff reasons that because of the broad scope of the Master Labor Agreement and the broad range of inspection work that SEC performs, this work is likely subject to trust fund contributions. Pls.' Opp'n at 24.

## 2. Defendant's Arguments

Defendant argues that plaintiffs' claim must fail for lack of evidence and that its own motion should be granted instead. First, defendant argues that plaintiff must do more than simply claim that the CPRs are actually for contract #0410067, rather than #0150020 as indicated on the majority of the CPRs plaintiff has filed with the Court. <u>See</u> Def.'s Reply at 16; Pls.' Ex. 126. Because plaintiff has not laid the necessary foundation for these records—whose handwriting is on the CPRs, why it was written there, for example—defendant argues that plaintiffs have no proof of any unpaid contributions in part H of their audit. Def.'s Reply at 17. Any handwritten notations on the CPRs are inadmissible hearsay under Federal Rules of Evidence 801 and 802, defendant contends. Therefore, defendants argue that plaintiffs cannot prove that defendant performed any work on contract #0410067, let alone covered work.[26]

---

contractor to whom the District awards a construction contract. . . and also to subcontractors of whatever tier utilized by such contractors for Project Work." Pls.' Ex. 89 at 2, 9.

[26] The Court sustains defendant's objections to the declarations of Michael Babel (No. 2) and Kurt Glass (No. 2) regarding the contract under which defendant performed work for the LAUSD. <u>See</u> Def.'s Objs. to Pls.' Opp'n Evid. at 2–3. The contracts speak for themselves, and any testimony interpreting the contracts is an impermissible legal conclusion. In any event, such testimony is not sufficient to meet plaintiff's burden on summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

Second, defendants argue that plaintiffs present no evidence that contract #0410067 was covered by the PSA, since plaintiffs fail to offer the contract itself or any other credible evidence.  See id. (discussing an award of contract letter addressed to another construction company, a declaration by a Local 12 member, and a screen print-out from an LAUSD website).  Third, defendant contends that even if the Court finds defendant performed work covered by the PSA on contract #0410067, plaintiff offers no evidence that defendant ever signed the PSA or a "letter of assent" for this particular contract.  Id. at 18–21.  Under the plain terms of the PSA, a letter of assent is required for a contractor to be bound.  Id. at 19–21 (arguing that Flores and previous arbitration agreements interpreting the 1999 PSA are distinguishable, as the operative language of that PSA was different).  Since plaintiffs have failed to offer one, defendant contends, it cannot be bound to the PSA for any underlying contracts.

### 3.    Analysis

The Court finds that disputed issues of fact preclude granting summary judgment for either party for the work claimed in Part H of plaintiffs' audit.  Given the evidentiary issues identified above, plaintiffs have not carried their burden of demonstrating that the work at issue was performed under contract #0410067, which defeats their motion for summary judgment.  In addition, plaintiffs have not demonstrated that any work performed under contract #0410067 would necessarily be work covered by the PSA, such that defendant would owe contributions to plaintiffs.[27]  For these reasons, genuine issues

---

[27] The Court further notes that if plaintiffs demonstrate that all the work claimed in Part H was performed pursuant to a PSA-covered contract, disputed issues of fact remain as to the number of hours plaintiffs are entitled to claim in this part.  In their audit, plaintiffs claimed all work classified by defendant as "technician" work, given the "broad scope of the Master Labor Agreement."  Pls.' Opp'n at 24; Decl. Babel No. 2 ¶ 5. Plaintiffs claim confronts the same difficulties here as are discussed in regards to Part K of the audit—the burden shifting of Brick Masons only takes hold once plaintiffs have demonstrated the fact of damage.  Plaintiffs must do more than state that the scope of the covered work is broad under the agreement to properly shift the burden to defendant for plaintiffs' claimed hours.  While plaintiffs' may be able to shift the burden of demonstrating the precise number of hours worked to defendant with respect to some of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

of material fact remain that preclude summary judgment for either party.[28]

###### H.   Plaintiffs' Claimed Hours and Damages in the Revised Audit

####### 1.   Admissibility of Plaintiffs' Audit under Federal Rule of Evidence 1006

Besides the issues of coverage discussed previously, defendant also opposes plaintiffs' motion on the grounds that the revised audit is inadmissible.  As such, defendant contends that plaintiffs lack admissible evidence for their claimed damages figure, which would preclude a grant of summary judgment in plaintiffs' favor.  First, defendant argues that plaintiffs' auditor removed certain hours from the revised audit on June 29, 2012, without ever providing defendant with a copy of this "further revised audit."[29]  As such, defendant contends that any statements the auditor made in his

---

the work claimed in this part of the audit, plaintiffs must first demonstrate that they are entitled to claim the work listed in defendant's records as "technician," for example.

[28] However, the Court agrees with plaintiffs that defendant's failure to execute a letter of assent to the PSA—if defendant did in fact never execute such a letter—would not bar plaintiffs' claims pursuant to the PSA.  Under PSA section 2.5, if defendant performed work on a covered project, defendant is bound by the terms of the agreement.  See Flores, 519 F. 3d 1045, 1048.  Defendant's attempt to distinguish the operative language of the PSA is unavailing, if defendant performed work covered by the PSA.

[29] The parties dispute this nomenclature—plaintiffs contend there is no "further revised audit," but explain their audit figures as follows.  According to plaintiffs' auditor, he "revised [his original] summaries on June 29, 2012 by removing certain descriptions of work from the audit claim in order to simply [sic] matters for this motion and/or trial. . . The 111,414.50 [hours of unpaid contributions] figure reflects the additional categories that I removed since issuing the revised report on June 29, 2012."  Babel Decl. ¶ 18.  The revised audit, provided to defendant on July 8, 2011, claimed 123,462.5 hours, or 12,048 more hours than the figure plaintiffs currently claim.  See Pls.' Exs. 107 at 2; 108 at 2; 109 at 2; see also Declaration of Christina A. Mitchell, Def.'s Ex O, Ex. A thereto, Letter from Marija Decker to Gregory Wolflick ("[T]he categories of work that were removed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | | Date | November 2, 2012 |
|---|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | | |

declaration regarding the contents of the audit are inadmissible hearsay.  Def.'s Opp'n at 22.  The auditor is incompetent to testify as to the contents of this revised audit, defendants argue.  Second, defendant argues that the auditor's statements do not qualify as a summary of voluminous documents under Federal Rule of Evidence 1006, and thus cannot be relied on for the instant motion.  Id.

The Court disagrees, and finds that the plaintiffs' audit is admissible evidence.  Under Federal Rule of Evidence 1006:

> [t]he proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.  To be admissible, "[t]he proponent of a summary must establish a foundation that: "(1) the underlying materials upon which the summary is based are admissible in evidence; and (2) the underlying documents were made available to the opposing party for inspection."  Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1259 (9th Cir. 1984).

Both of these criteria are met here.  First, the underlying materials upon which plaintiffs' audit are based are admissible in evidence under an exception to the hearsay bar.  Some of these documents were turned over to plaintiffs during discovery, and include defendant's ADP payroll records, cash disbursement journals and check registers, and field time tickets.  Under Federal Rule of Evidence 803(6), these records all qualify

---

are: Blown Down, CAV Inspection, T-Bar, and Ceiling Inspection.  The removal of this work resulted in a reduction of $91,842.40 for fringe benefit contributions and reduced the claimed hours by 12,048.00.").  Along with this letter, sent via email on August 17, 2012, plaintiffs' counsel sent three other documents containing "copies of the June 29, 2012, audit summaries with the Auditor's notations indicating the hours recently deleted from the Trusts' claim."  Id.  To the best of the Court's knowledge, neither party has filed these documents with the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|----------|----------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

as records of a regularly conduct activity.   In addition, because plaintiff was unable to obtain certain documents from defendant, due to defendant's record-retention policies, other documents were obtained from various public entities.  Decl. of Marija Decker No. 1, ¶ 3; Pls.' Reply at 13.  These documents are admissible as public records.  Fed. R. Evid. 803(8).  Second, defendant had available or in its possession all of these underlying documents.  Some of these documents originated from defendant's records, and plaintiffs provided others to defendant in discovery.  Decker Decl. No. 1 ¶ 3.  Defendant does not seriously contest otherwise.  Finally, there is no dispute that the documents giving rise to plaintiffs' audit are voluminous—the audit itself spans hundreds of pages.  Accordingly, plaintiffs' audit is admissible under Rule 1006.

## 2.    Plaintiffs' Evidence of Claimed Hours and Damages

First, plaintiffs are entitled to an amount of damages related to work that is covered by the CBA according to this Court's order.  Other than defendant's evidentiary arguments which the Court has rejected, defendant makes no showing that plaintiffs' auditor has incorrectly determined the number of hours at issue, as defendant has offered no audit of its own.  Furthermore, because of defendant's document-retention policies, it bears the burden of demonstrating that plaintiffs' figures are incorrect once plaintiff has presented sufficient evidence that at least some hours went unpaid to covered employees.  Therefore, the Court finds that plaintiffs are entitled to summary judgment on their damages claims in Parts A and B of the audit.[30]  Plaintiffs may submit a revised damages schedule to this effect.

However, as discussed in this order, disputed issues of fact remain in regards to the entirety of Part C, holiday hours; Part H, LAUSD hours; and Part K, cash disbursements, that preclude granting summary judgment as to these categories.  In addition, summary judgment is also inappropriate for Parts E, F, and G, which all relate to the dispute

---

[30] The Court finds that defendant's objections with regards to plaintiffs' interest calculations are without merit; a lay witness can permissibly testify as to the proper amount of interest that is owed, for example, based on simple mathematical computation. See Decl. of Bernanrd Ramos ¶¶ 17–18; Pls.' Responses to Def.'s Objs. to Pls.' Decls. at 2–3.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

O

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1476-CAS (VBKx) | Date | November 2, 2012 |
|----------|----------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, ET AL. V. SMITH-EMERY COMPANY, INC. | | |

regarding the types of work covered by the parties' agreement.  The precise amount of damages that plaintiffs will ultimately be entitled to for these three parts of the audit will depend on: (1) which categories of work are covered by the CBA, in addition to those that the Court finds are unambiguously part of the agreement; and (2) how many hours defendant's employees or subemployees worked in each of these covered categories.[31]  Although Appendix B provides for broad coverage of not only those inspection and testing work specifically listed therein—but also "similar duties" related to those tasks, or "other tasks" related to the inspection work described therein—defining what types of work qualify as similar duties or other tasks presents the Court with disputed issues of fact that cannot be resolved on summary judgment for either party.  The CBA is ambiguous with regards to how far the Coverage Definition extends in this regard, as discussed previously.  Once it is conclusively determined what types of work are covered by the agreement, then the burden may shift to defendant to prove that plaintiffs' claimed number of hours for these categories is incorrect, if defendant's records are otherwise unavailable.

### V.    CONCLUSION

In accordance with the foregoing, the Court GRANTS in part and DENIES in part plaintiffs' motion for summary judgment.  The Court DENIES defendant's motion for summary judgment in its entirety.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[31]  In addition, because plaintiffs' claim for hours based on work designated as "Tech Out of Shop" or "Lab Tech Away" will depend on what categories of work are properly considered part of the agreement, summary judgment is inappropriate for claimed damages pertaining to these categories of work.  These hours relate to employees who purportedly performed other, covered work under the agreement, who plaintiff claims are covered by the "all hours worked or paid" language of the CBA.  See Decl. Babel No. 1 ¶ 11.